Attachment A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

Paul Michael Hoover

\# 250 30 111

*Your full name*

v.

Patricia D. Corbin
Christopher Meyer
Ellen Hoffman
K. Kelly
F. J. Bowers
J. C. Petrucci

*Enter above the full name of defendant(s) in this action*

**FEDERAL CIVIL RIGHTS
COMPLAINT
(*BIVENS* ACTION)**

Civil Action No.: 3:22-cv-36 Groh, Trumble, Sims
*(To be assigned by the Clerk of Court)*

**FILED**

MAR - 8 2022

U.S. DISTRICT COURT-WVND
WHEELING, WV 26003

## I.   JURISDICTION

This is a civil action brought pursuant to **Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)**. The Court has jurisdiction over this action pursuant to Title 28 U.S.C. §§ 1331 and 2201.

## II.   PARTIES

*In Item A below, place your full name, inmate number, place of detention, and complete mailing address in the space provided.*

A.   Name of Plaintiff: Paul Michael Hoover Inmate No.: 250 30 111
Address: Federal Correctional Institution
P.O. Box 1000, Morgantown, WV 26507 - 1000

*In Item B below, place the full name of each defendant, his or her official position, place of employment, and address in the space provided.*

**Attachment A**

B.    Name of Defendant: _Patricia D. Corbin_
Position: _Senior Clinical Physician Assistant_
Place of Employment: _Formerly Health Services Morgantown FCI_
Address: _Federal Correctional Institution, P.O. Box 1000, Morgantown,_
_WV, 26507-1000 *Note by policy MRG FCI will not give_
_updated addresses so I am filing a motion to compel discovery_
Was this Defendant acting under the authority or color of federal state
law at the time these claims occurred?     ☒ Yes        ☐ No

If your answer is "YES," briefly explain: _She was the medical_
_provider assigned to me at Morgantown FCI,_

B.1    Name of Defendant: _Christopher Meyer_
Position: _Clinical Physician Assistant_
Place of Employment: _Health Services Morgantown FCI_
Address: _Federal Correctional Institution, P.O. Box 1000_
_Morgantown, WV, 26507-1000_

Was this Defendant acting under the authority or color of federal state
law at the time these claims occurred?     ☒ Yes        ☐ No

If your answer is "YES," briefly explain: _He was a medical_
_provider assigned to me at Morgantown FCI,_

B.2    Name of Defendant: _Ellen Hoffman_
Position: _Health Services Administrator_
Place of Employment: _Health Services Morgantown FCI_
Address: _Federal Correctional Institution, P.O. Box 1000,_
_Morgantown, WV, 26507-1000_
Was this Defendant acting under the authority or color of federal state
law at the time these claims occurred?     ☒ Yes        ☐ No

Attachment A

If your answer is "YES," briefly explain: _She is the Health Services Administrator assigned to my case. She answered my filings for administrative remedies_

B.3    Name of Defendant: _K. Kelly_
Position: _Assistant Warden_
Place of Employment: _Morgantown FCI_
Address: _Federal Correctional Institution, P.O. Box 1000, Morgantown, WV, 26507-1000_

Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?    ☒ Yes        ☐ No

If your answer is "YES," briefly explain: _He authored administrative policies and answered my filings for administrative Remedies as well as managing all operations in Health Services and the SHU and Cares Act decisions as well as compassionate release_

B.4    Name of Defendant: _F.J. Bowers_
Position: _Prior Warden at Morgantown FCI_
Place of Employment: _Unknown at present_
Address: _Unknown at present and this is the subject of a motion to compel discovery, because, MRG FCI will not provide me this information._
Was this Defendant acting under the authority or color of federal state law at the time these claims occurred?    ☒ Yes        ☐ No

If your answer is "YES," briefly explain: _He authored and created administrative policies in my case and answered my filings for administrative Remedies as well as managed all operations at Health Services and the SHU and oversaw Cares Act and compassionate release due process and decisions,_

Attachment A

B.5    Name of Defendant: J.C. Petrucci
Position: Regional Director of the Mid-Atlantic Region of the BOP,
Place of Employment: Mid-Atlantic Regional Office of the BOP.
Address: 302 Sentinel Drive, Suite 200
        Annapolis Junction, MD 20701

Was this Defendant acting under the authority or color of federal state
law at the time these claims occurred?    ☒ Yes        ☐ No

If your answer is "YES," briefly explain: He authored the BP
10 decisions and condoned all activities of MRG
FCI's Warden, AW and Health Services and
SHU operations.

## III.    PLACE OF PRESENT CONFINEMENT

Name of Prison/ Institution: Morgantown Federal Correctional Institution

A.    Is this where the events concerning your complaint took place?
        ☒ Yes        ☐ No

If you answered "NO," where did the events occur?

_____

B.    Is there a prisoner grievance procedure in the institution
where the events occurred?    ☒ Yes        ☐ No

C.    Did you file a grievance concerning the facts relating to this complaint in the
prisoner grievance procedure?
        ☒ Yes        ☐ No

D.    If your answer is "NO," explain why not: _____

_____

_____

_____

E.    If your answer is "YES," identify the administrative grievance procedure
number(s) in which the claims raised in this complaint were addressed

**Attachment A**

and state the result at level one, level two, and level three. **ATTACH GRIEVANCES AND RESPONSES:**

These were filings for administrative remedies

LEVEL 1 _BP 8.5's, eight in total_

LEVEL 2 _BP 9, three (7/21/20, 10/1/20 and 1065643-F1)_

LEVEL 3 _BP 10, one with remedy ID No. 1065643-R1_

## IV. PREVIOUS LAWSUITS AND ADMINISTRATIVE REMEDIES

A. Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?    ☒ Yes    ☐ No

B. If your answer is "YES", describe each lawsuit in the space below. If there is more than one lawsuit, describe additional lawsuits using the same format on a separate piece of paper which you should attach and label: "IV PREVIOUS LAWSUITS"

   1. Parties to this previous lawsuit:

      Plaintiff(s): _Paul Michael Hoover_

      Defendant(s): _F. J. Bowers_

   2. Court: _U S District Court for the Northern District of West Virginia_
      (If federal court, name the district; if state court, name the county)

   3. Case Number: _5: 21-cv-118_

   4. Basic Claim Made/Issues Raised: _I sought medical treatment_

   5. Name of Judge(s) to whom case was assigned:
      _Hon. Judge John Preston Bailey_

   6. Disposition: _Denied_
      (For example, was the case dismissed? Appealed? Pending?)

   7. Approximate date of filing lawsuit: _7/19/21_

**Attachment A**

8.    Approximate date of disposition. Attach Copies: <u>7/20/21</u>

C.    Did you seek informal or formal relief from the appropriate administrative officials regarding the acts complained of in Part B?

        ☒ Yes        ☐ No

D.    If your answer is "YES," briefly describe how relief was sought and the result. If your answer is "NO," explain why administrative relief was not sought.

<u>by BP 10 I sought diagnostic testing and sick calls to be allowed with Referral to UPMC GI clinic for surgical biopsies. The Regional Director (Mid-Atlantic Region of the BOP) denied all of this</u>

E.    Did you exhaust available administrative remedies?

        ☒ Yes        ☐ No

F.    If your answer is "YES,", briefly explain the steps taken and attach proof of exhaustion. If your answer is "NO," briefly explain why administrative remedies were not exhausted.

<u>All are attached</u>

G.    If you are requesting to proceed in this action *in forma pauperis* under 28 U.S.C. § 1915, list each civil action or appeal you filed in any court of the United States while you were incarcerated or detained in any facility that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. Describe each civil action or appeal. If there is more than one civil action or appeal, describe the additional civil actions or appeals using the same format on a separate sheet of paper which you should attach and label "G. PREVIOUSLY DISMISSED ACTIONS OR APPEALS"

1.    Parties to previous lawsuit:

Attachment A

Plaintiff(s): _____

Defendant(s): _____

2.   Name and location of court and case number:

_____

_____

_____

3.   Grounds for dismissal:   □ frivolous   □ malicious
     □ failure to state a claim upon which relief may be granted

4.   Approximate date of filing lawsuit: _____

5.   Approximate date of disposition: _____

## V.   STATEMENT OF CLAIM

*State here, as **BRIEFLY** as possible, the facts of your case. Describe what each defendant did to violate your constitutional rights. **You must include allegations of specific wrongful conduct as to EACH and EVERY defendant in the complaint.** Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, you must number and set forth each claim in a separate paragraph. **UNRELATED CLAIMS MUST BE RAISED IN SEPARATE COMPLAINTS WITH ADDITIONAL FILING FEES. NO MORE THAN FIVE (5) TYPED OR TEN (10) NEATLY PRINTED PAGES MAY BE ATTACHED TO THIS COMPLAINT. (LR PL 3.4.4)*

CLAIM 1: _____ Refer to the 10 pages containing over 6 claims which are attached. _____

_____

_____

_____

_____

Supporting Facts: _____

**Attachment A**

CLAIM 2: _____

Supporting Facts: _____

CLAIM 3: _____

Supporting Facts: _____

CLAIM 4: _____

Supporting Facts: _____

Attachment A

_____
_____
_____

CLAIM 5: _____
_____
_____
_____
_____

Supporting Facts: _____
_____
_____
_____
_____

## VI.    INJURY

Describe **BRIEFLY and SPECIFICALLY** how you have been injured and the exact nature of your damages. Intractable abdominal and perianal pain, blood and pus in my stool, severe constipation causing many measured harms (spinal disc herniation and radiculopathy causing severe falls, Inguinal hernia, hydrocele on my testicular nerve). Untreated condition has caused chronic kidney disease, poorly controlled hypertension, worsened seizure disease, aggravated pulmonary fibrosis with 2 strokes causing ataxia, aggravated leg vein thrombosis. The falls caused left shoulder rotator cuff and labral cartilage tears with rupture of biceps tendon, severe osteophyte-discal complex in the neck, disc tear with damage to the right 3rd lumbar nerve, retrolisthesis of new onset. Greater

## VII.    RELIEF    depression, PTSD, Pain. Loss of use of Right leg and left arm, Fecal incontinence, Rectal bleeding, Unevaluated chest pain, palpitations and hearing loss

State **BRIEFLY and EXACTLY** what you want the Court to do for you. *Make no legal arguments. Cite no cases or statutes.* Remove me from the BOP as they are intent on harming me by deliberate indifference, assault and battery. Monetary award of $8,900,000.00, because, I will need several surgeries, frequent medical and hospital care, functional assistents for ADL's, special vehicles for transportation and drivers, substantial psychiatric care, long term pain management with medications and injections and implantable devices, labor assistence for all light/medium/heavy duty needs, special functional designs for my home and special items to lessen pain and disability,

**Attachment A**

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above action, that he/she has read the above complaint and that the information contained in the complaint is true and accurate. Title 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at ___Morgantown   FCI___ on ___3/2/22___ .
            (Location)                    (Date)

_____
Your Signature

17

Claim/ground #1: Deliberate Indifference, including prejudice by the Warden and AW, condoned by the Regional Director of the BOP, followed by prejudicial actions, to my diagnosis of Crohn's disease which was established by several physicians. Furthermore, denial of a medically necessary evaluation by a specified physician as ordered/recommended by several other physicians independently. In the prejudiced letter by the Warden and AW, there exists a criminal falsification/alteration of actual medical evidence as a means to deny me due process in my administrative remedy. In denying my diagnosis and the medically necessary evaluation with Dr. Johnson, my operating surgeon, all of my treatment was blocked. Many serious harms resulted and some unmeasured may be occurring as Health Services here are acting in prejudice by not allowing me any sick calls for my worsening abdominal signs and symptoms. I seek release from prison to cease this cruel and unusual punishment so as to pursue my medical care without prejudices, and stop further suffering and disability or death.

Supporting Facts

On 3/30/20 Emergent abdominal surgery followed a COVID-19 like infection (A to E). At admission my examination showed "moderate RLQ tenderness, mild guarding, positive Psoas sign, positive McBurney's point tenderness, positive Rovsing's sign" (B). A classic finding of Crohn's disease ("CD") was seen at surgery, "Right lower quadrant inflammatory changes with dense adhesions between the lateral wall of the cecum and the pelvic sidewall" (D).

Following surgery I progressively worsened. Urgent evaluation occurred with my operating surgeon, Dr. Johnson, on 4/16/20. He discovered another finding of "CD", "Data reviewed CT abdomen pelvis 3/30/20 reviewed, fecalization of the distal ileum noted" (I), by he and "the Radiologist" as they corrected the initial interpretation. Urgent testing was ordered (Claim #6)

On 8/24/20 a "state of the Art" antibody blood test was abnormal and interpreted as "suggestive of Crohn's disease" with no other possibilities represented which could explain those antibody levels being so elevated (LL) (D-9)

For emergent declines on 10/16/20, by ambulance I was sent to the emergency department (ED) at Mon Health Medical Center ("MHMC"). The ER specialist, Dr. Linberg, and the Gastroenterologist, Dr. Reynolds, concluded in their "Medical Decision Making", "Dr. Reynolds also made recommendations specifically he asked for Endocort 9mg daily as he believes this would not cause adverse

18

effects and may control the patient's symptoms until he can get on an immunosuppressive agent" (VV). In the ED at MHMC and at hospital discharge, 9 days later, was "3. Crohn disease" (WW, P-3). Dr Linberg, Dr Reynolds, Dr Ward and Dr Ghabra all are listed as making this diagnosis (WW, B-3, P-3) based upon reviewing all medical facts and my examination. Thereafter, no other medical testing of my abdomen was allowed or conducted. Some physicians seeing me thereafter were denied by Health Services (HSA Hoffman, Miss Corbin, Mr Meyers) of MRG FCI, Key elements of medical data to review (i.e. Dr Dodson was not given the abnormal antibody test and Dr O'Keefe was not given the 3/30/20 CT abdomen pelvis films to view). Dr Carpenter as recently as 8/18/21 concluded by "CD" was active (T-10 to A-11).

During my care several physicians order/Recommended an evaluation by, specifically, Dr Johnson, my operating surgeon, as medically necessary to move on to my treatment with an immunosuppressive agent (VV, D-3, E-3, O-5, J-6).

A phone call to Health Services, on 3/30/21, states I was examined by Dr. Johnson, however, that is not true (K-6). In fact, Dr Dodson, on 3/30/21, wrote "I offered him followup with Dr Johnson as he was familiar with the case" (J-6).

As I sought treatment I was denied by Warden Bowers and AW kelly on 2/9/21 (E-6) in a prejudiced letter. I have this opinion, because, they altered evidence or deleted its Relevance with an agenda to Remove every piece of medical data arguing for "CD", such as :

1) Falsifying the operative findings made on 3/30/20 to REMOVE "Right lower quadrant inflammatory changes" (compare D, E, with E-6) and, note, that finding is classic for Crohn's disease (2019 "Current Medical Diagnostics and Treatment" pages 648, 652 to 653; "The Merck Manual of Medical Information, 2nd Home edition, page 740)

2) No mention was made about the 4/16/20 notes stating a finding seen in "CD", namely, "Data Reviewed CT abdomen pelvis 3/30/20 Reviewed, fecalization of the distal ileum noted" (see I and it's not in E-6).

3) The confirmatory antibody blood test showing Results "suggestive of Crohn's disease" with no other possibilities Represented which could explain those antibodies at such high levels (LL) was entirely eliminated from the prejudicial arguments of Warden Bowers and AW kelly, to deny me all treatment (E-6).

18

19

Thereafter, on 4/14/21, by referring back to that prejudicial letter of 2/9/21 (E-6)(the only BP 9 I filed regarding my abdominal treatment) DENIED me the evaluation with Dr Johnson, my operating surgeon, (N-6), whose evaluation had been ordered/recommended by several physicians during my care (D-3, E-3, O-5, J-6). Two bizarre points stand out:

1) the 2/9/21 letter, from the Warden and AW, states "a consultation request has been submitted and approved for Dr Johnson to evaluate" (E-6).

2) In the denial (N-6) it states "you have been scheduled for a general surgery consult and have been seen" (N-6). The general surgery consult was with Dr Dodson, on 3/30/21, who wrote "I did offer a follow up with Dr Johnson to continue the discussion" (of starting treatment with an immuno-suppressive drug) "as he" (Dr Johnson) "is familiar with his chart" (I-6).

I sought remedy by BP 10 to the Mid-Atlantic Regional Office of the BOP and the Regional Director (Mr Petrucci) condoned these actions (T-6).

After this, all sick call requests, by trulincs or written + placed in locked drop box, were ignored, thereby, denying me all care for the worsening abdominal signs and symptoms I was experiencing. Dates of refused sick calls were 4/16/21 (O-6), 4/17/21 (P-6), 4/22/21 (Q-6 to S-6), 4/24/21 (L-10), 7/2/21 (J-5) 9/22/21 (J-10, Q-10, R-10), 11/4/21 (G-11), 11/20/21 (A-12) and 2/10/22 (L-13).

Serious Harms experienced (known up to November 2020 and unknown thereafter as all care is denied .... see Claim #2, even rectal bleeding for 11 months has been ignored except by giving me diapers): 1) Lumbar disc herniation/protrusion caused right leg nerve damage which caused 2 severe falls (XX, YY, ZZ, A-3 to D-3, H-3 to O-3, R-3 to Z-3, A-4 to F-4, J-5, I-5, T-10 to A-11). 2) 2 strokes while in critical care at MHMC on 10/17/21 and 10/21/21 with right-sided weak and poor balance. 3) Poorly controlled hypertension and worsened Pulmonary Fibrosis which were both instrumental in causing the 2 strokes (B-5, A-3 to C-3, X-4, Y-4, G-5, F-5, JJ, U-4 to W-4, T-10 to A-11). 5) All injury assessments from those 2 falls were egregiously delayed by deliberat indifference to my left arm/shoulder pain, loss of use of my left arm and obvious deformity.

19

20

The falls caused Left shoulder rotator cuff tear, left shoulder labral cartilage tear, rupture of the left biceps tendon (D-12), new onset 2mm retrolithesis of lumbar #1 on lumbar #2 (T-7 to W-7, X-7 to Z-7, ZZ, H-4), disc annular tear right side lumbar #3 and lumbar #4 and it contacts the right lumbar #3 nerve root and thickens that nerve (ibid exhibit), osteophyte-disc complex at Cervical #6 and Cervical #7 especially left paracentral and left lateral recess with severe left neuroforaminal narrowing (I-12, J-12). 6) Chronic kidney disease (K-8, G-4 to T-4), this can show rectal bleeding. 7) Aggravation of leg vein thrombosis (D-4 to H-4, F-3, G-3) and it's care is critical as I have had pulmonary embolism (T-10 to A-11, JJ, J-8, N-8, KK). 8) Right inguinal hernia and right hydrocele pressing on my testicular nerve with excruciating pain (QQ, I-6). 9) Worsening of Seizure disorder with Neurologist increasing me from one to three seizure medications (A-3 to G-3). Though, Health Services (Miss Corbin, Mr. Meyers, HSA Hoffman) has shown deliberate indifference to my seizures by refusing to provide me one of my seizure medications (gabapentin)(F-3) from 10/25/20 to now, over 16 months! 10) Inability to provide Reasonable informed consent to COVID-19 vaccination, by the following reasoning : A) I have untreated Crohn's disease, an autoimmune inflammatory recurrent chronic disease, and, I will never get treatment in prison, because, I am refused all sick calls even ones for rectal bleeding B) The COVID-19 vaccination "can trigger a flare-up of an autoimmune disease" (D. Pugliese, Chief of Rheumatology, Geisinger Clinic, Danville, PA as reported in the "USA Today", 3/16/21, page 2D) C) Untreated flare ups have caused and continue to cause serious harms D) I can't sustain any triggering of flare ups because I will bring on more harms as they go untreated.

Other possible harms of untreated "CD": Rectal bleeding can be ominous as colorectal cancer occurs at an 18 fold greater rate in patients with Crohn's disease ("Harrison's Principles of Internal Medicine", 15th edition, pages 1686 to

20

21

1687 and 1690). Rectal bleeding occurs with intestinal obstruction, constipation, perianal fissures and fistulae, hepatic steatosis, amyloidosis, vasculitis, small bowel cancers, perianal abscesses. Other harms from untreated "CD" are: primary sclerosing cholangitis, gall stones, pancreatitis, kidney stones, impaired urine dilution and alkalinization, excessive oxalate absorption, UTI's, urinary tract fistulae, retroperitoneal extensive with hydroureter & hydronephrosis, episcleritis, uveitis, ankylosing spondylitis, sacroiliitis, pyoderma gangrenosum, erythema nodosum, aphthous stomatitis, hypertrophic osteoarthropathy, osteoporosis, osteomalacia, myocarditis, endocarditis, Interstitial lung disease (pulmonary fibrosis), deep vein thrombosis, chronic kidney disease. Finally see exhibit T-13, U-13 regarding diagnosing a disease like "CD".

Claim/ground #2. By the prejudiced deliberate indifference by Warden Bowers & AW Kelly, condoned by the Regional Director, Mr. Petrucci, to all of my abdominal signs and symptoms, I experienced the denial of all care by refusing me 9 sick call requests concerning the worsening of my abdominal signs and symptoms. One ominous, obvious and verified by Health Services, sign is RECTAL BLEEDING which is a potentially fatal harbinger of serious disease. Miss Carbin, Mr. Meyers ignored this.

I had had earlier rectal bleeding (I,J, D-9), however, it returned in earnest starting February 2021.

On 3/30/21 Dr. Dodson by an anoscopic exam ruled out the benign cause of rectal bleeding by seeing with the scope "No significant hemorrhoidal disease" (I-6).

I sought an indicated test for rectal bleeding, a colonoscopy, yet it was denied (U-6). I assert a colonoscopy is indicated based on:

1) Health Services in their records state it is indicated on 3/25/21 by "Colon cancer YES: fecal occult blood x 3 recommended per PHG, colonoscopy recommended per PH guidelines" (H-6).

2) Here is what the seminal medical textbooks say:

• ALL RECTAL BLEEDING should be evaluated immediately" ("the Merck Manual" 16th edition, page 831).

• "Whenever RECTAL BLEEDING occurs, even with obvious hemorrhoids or known diverticular disease, coexisting cancer must be ruled out", by, at least, a flexible

21

22

Sigmoidoscopy and colonoscopy ("The Merck Manual", 16th edition, page 853).

• The most common causes of Rectal bleeding are hemorrhoids, colon cancer, diverticular disease, and inflammatory bowel disease (Crohn's disease and ulcerative colitis) ("The Merck Manual of Medical Information", 2nd Home edition, page 777).

• Regarding person's diagnosed with "CD", such as me:
Colorectal cancer occurs at a 18 fold increase over age adjusted populations without Crohn's ("Harrison's Principles of Internal Medicine", 15th edition, pages 1686 to 1687 and 1690),

• Based upon my high ASCVD Risk scoring (M-10) (as interpreted via the seminal article on this topic "The interplay of Global Atherosclerotic cardio-vascular disease (ASCVD) Risk scoring and cardiorespiratory fitness for the prediction of All-cause Mortality and myocardial infarction: The Henry Ford Exercise testing project (The FIT Project)", Al-Rifai, M. et al, The American Journal of Cardiology, 2019, 124 No. 4, pages 511 to 517), I have a death Rate within 10 years of 33%: Frequent profuse bleeding initiates compensatory mechanisms which put a lot more "physical stress" on the heart thereby temporarily magnifying a person's cardiac Risk to a much higher level ("The Merck Manual of Medical Information", 2nd Home edition, pages 142-143).

Mr Petrucci concluded his detailed investigation of my medical file by 6/20/21 (T-6). Therefore, with intimate knowledge of these events, condoned such actions. His letter contains Not only complete hearsay, but, also huge errors. I never saw a gastroenterologist on 3/30/21.

The trulincs sick call system is 100% reliable as inmates are instructed on the screen to do sick calls "do not submit another e-cop out on the same matter until 30 days have past"

During the approximately 5 chronic care visits, occurring during the 10 months all Rectal bleeding/abdominal sick calls were ignored, when I brought up that topic I was ignored. None of those visits assessed my worsening abdominal signs and symptoms, including Rectal bleeding, and No Rectal exam or scrotal exam was done as well as No abdominal exam. No tests were ordered or counseling provided to me. No simple tests were done such as fecal leukocytes or stool for O & P. Dr Clarke's exam of 7/5/21 was notable because his skin exam was "within Normal limits" (W-12), despite my left arm on 7/7/21, was documented to have a lesion assessed as

23

"Neoplasm of unspecified behavior of the bone, soft tissue and skin" (P-12 to S-12). On 9/21/21, I developed a COVID-19 infection (P-10, S-10) and my rectal bleeding further increased to soak through 3 layers of clothes between bowel movements (J-10, Q-10). I showed these blood stained clothes to Health Services (Miss Corbin) and instead of finally allowing me to have the long overdue indicated colonoscopy, she issued me diapers to protect my clothes. She would not even let me show her the blood soaked used diapers (G-11) or issue me a new pack of diapers when I ran out (A-12).

Claim/Ground #3. Deliberate indifference to my life and safety, by being placed, while ill, frail and convalescing from 2 strokes with 3 critical care admission within the prior 8 days, into a dangerous SHU cell with "24/7" confinement in a nearly sound proof cell with No medical emergency call system, alone and the staff far away, down 2 halls and around 2 corners in an office. Furthermore, within this disciplinary and traumatic confinement, I was denied ALL of my critical health and life sustaining medication ordered by West Virginia University Medical Center. My pleas for my medications were denied for over 48 hours. The staff of the SHU (Mr Thrasher and others) as well as Health Services (Mr Shaeffer and Miss Corbin) were well aware of my needed medications. Serious harms occurred as my 9 medications were denied to me and I experience seizures, fecal incontinence and hypertensive crisis. These actions were criminal as assault and indirect battery with physical harms experienced and grounds for Release by habeas corpus or compassionate release. I still experience severe PTSD. Furthermore, in June 2021 this happened again!

Supporting Facts

On 10/16/20 I was taken, by ambulance, to the ED at HHMC and was admitted to critical care. Over the next 8 days of admission at HHMC, I had 3 total critical care admissions and experienced 2 strokes (10/17/20 at 19:00 EDT + 10/21/20 at 15:00 EDT)(B-5, X-4, Y-4). These neurological events occurred, because, my hypertension and pulmonary fibrosis (JJ) were aggravated by my lack of treatment for "CD" (see timing of ↑ BP and ↓ O₂ sats in reference to critical care admissions and strokes by comparing V-4, W-4, X-4, Y-4 with B-5 and F-5, G-5). My seizures were aggravated by the untreated "CD" and 2 new seizure medications were added (A-3 to C-3) and my

23

24

chronic kidney disease was also worsened by my lack of "CD" treatment (K-8, G-4 to T-4). During that hospital stay I developed, as sequelae to not treating my "CD", a new right inguinal hernia with pressure on the testicular nerve (QQ, I-6) and lumbar disc herniation/protrusion with right leg nerve damage (XX, YY, ZZ, A-3 to D-3, H-3 to O-3, R-3 to Z-3, A-4 to F-4, J-5, I-5, T-10 to A-11). My 9th day of hospitalization was at WVUMC after needing an ambulance to transport me there. I was discharged on 10/25/20, on 9 critical health and life sustaining medications (D-3 to G-3) with severe warnings to not suddenly stop these medications given to me (L-5, M-5). The guard, Mr Duffy, was in my hospital room while the nurse gave me those instructions and the discharge paperwork. He took me immediately to Health Services, at MRG FCI, where those discharge papers were shown to Mr Schaeffer, a nurse, and he contacted Miss Corbin after knowing my medication needs and for her to authorize a shot of Lovenox for me. I was then handcuffed and admitted to the SHU by Mr Thrasher (K-5). The cell was fundamentally unacceptably unsafe for any ill person as I described above. Mr Thrasher saw all of my possessions, hospital paperwork and all, as is customary. Everyone had full knowledge of my medication needs and the serious harms of stopping them.

Over time, I was given NONE of my 9 critical health and life sustaining medications. I sought the medications. I was told none are ordered. When I asked the pill dispensing nurse, Mr Denison, he said "If you needed them you would get them". At hour 36 I had seizures, fecal incontinence and pain with hypertensive crisis. It took 4 hours of me yelling to get staff to respond then another many hours for Miss Corbin to assess me and finally more hours to get any medications. The lowest of 5 blood pressures by Miss Corbin was 161/106.

On 6/12/21 to 6/14/21 this all happened again (H-9).

I have sought but to no avail all pharmacy records and health services records which will substantiate my allegations. Such cruel torture, assault and battery are certain grounds for habeas corpus and compassionate release and I request this so, because, that is a prerequisite to survive my incarceration. This was investigated by the Regional Director of the BOP, Mr Petrucci, and condoned by him (T-6).

Claim/ground #4. Health Services (Mr Meyers, Miss Corbin, HSA Hoffman) showed me deliberate indifference to all sequelae from my COVID-19 infection and some sequelae could

24

25

be a harbinger of serious and even deadly harms. Some harms appear lasting.

Supporting Facts

After a COVID-19 infection in September 2021 (S-10) I noticed lasting problems for which I submitted a sick call (G-11). This sick call request was completely ignored as well as later sick call requests about some of these sequelae (on 2/10/22 in L-13 and R-13 as well). Of concern to me is I still have a lot of hearing loss in my right ear and of great concern is my scary chest pain, palpitations and shortness of breath. The rectal bleeding I have already discussed.

Not even a simple to run EKG has been done (machine is right here and 8 staff members are always here ... 3 PA's, 3 nurses, doctor, change nurse) and not even a 30 second glance into my right ear has been done.

Ignoring my heart symptoms is a deadly form of deliberate indifference. The staff here is fully aware of this, because, Mr. Meyers, on 5/5/21, told me my elevated ASCVD Risk Score of 14.3% which age adjusted is 17.8% (M-10). By running that number through the seminal article, on that topic, from the 2019 American Journal of Cardiology (cited in claim/ground #2, page 6), my death rate within 10 years is 33%. Another deliberate indifference here by Health Services (Mr. Meyers, Miss Corbin, HSA Hoffman) is denying to me my anti-hyperlipidemia medication, Colestipol, for 5 months, because, "it was denied by administration/URO" (per Mr. Denison in pill line in September 2021). This also is a deadly form of deliberate indifference. Such cruel and unusual punishment with it's deadly potential is grounds for release by habeas corpus/compassionate release. Is this criminal negligence?

Claim/ground #5. Health Services (Miss Corbin, HSA Hoffman) deliberate indifference with discrimination (?criminal) to allowing me an accurate and complete list of my active and preexisting medical conditions by: 1) only accepting a medical condition to be present if certified medical records substantiate it (W) and 2) only allowing a mere 4 sources of medical records to be obtained, despite, based upon my age and medically complex history, 22 critical medical records sources were needed (X to Z, AA to EE). At the meeting with HSA Hoffman, to provide me remedy, no other medical records sources were allowed to be obtained (W). I have sought, yet, not been provided all of the signed and dated, by me, "releases of information" forms, used to obtain medical records, so as to substantiate my allegations.

This deliberate indifference to my need for an accurate and complete list of

25

26

active and preexisting medical conditions is seriously harmful with looming deadly consequences, particularly for me, with my high death rate within 10 years and the present COVID-19 pandemic while I reside in a very high risk environment. This deliberate indifference is ipso facto discrimination against my age and complex medical history and problem list. The faulty list, on file with Health Services, speaks for us prisoners as we are seen as liars by outside medical providers, and, more seriously harmful in emergencies when only the faulty list speaks for us, to medical providers and emergency first responders, as they make treatment decisions. With medical advances many interventions are quite radical and can be harmful if active and preexisting medical conditions are not accurately disclosed to medical providers. My faulty list can led to me receiving inappropriate, ineffective or harmful treatment. To make examples of how my present list is faulty, it does not contain my pulmonary fibrosis (X-5 setup to, JJ, A-3 to C-3, A-13, T-10 to A-11) as well as my cerebrovascular disease of strokes. Recall, at MHMC, I suffered 2 strokes related to my pulmonary fibrosis (compare F-5 to B-5 using X-4 and G-5 to B-5 using Y-4). Still Health services omits these highly significant health problems to harm me in receiving safe appropriate care (A-13). Such deliberate indifference causing serious to deadly consequences is grounds for habeas corpus and compassionate release. Again, this was investigated and condoned by Mr Petrucci at the Regional office of the Mid-Atlantic Region of the BOP (T-6).

Claim/ground #6. Health Services (Miss Corbin, Mr Meyers, HSA Hoffman) showed deliberate indifference to my need for "urgent" diagnostic testing, as ordered by my operating Surgeon, Dr Johnson, on 4/16/20 (I, J), as he saw me for urgent postoperative declines and he needed those tests to start urgent treatment (medical common sense). As time passed I plead for the orders of these tests to be complied with, yet, to no avail (K, N to T). As "CD" was suspected based upon my operative findings (D, E) and CT scan result as reviewed by Dr Johnson on 4/16/20 (I), timing was critical to link the tests with the first very severe flare (T-13, U-13). The only verifiable means to link the flare with the test is to order the tests to be done "urgently" (common sense). Health Services (Miss Corbin, Mr Meyers, HSA Hoffman) allowed my first "urgent" test to be done 35 days late (M). Urgent tests are to be done in a couple of days (common sense). The second test was not allowed until it was 3 months late (U). Neither test was done during a major flare. This set the stage, by seriously harmful deliberate indifference, for me to go untreated up to now, 19 months later and experience a myriad of known harms and many left unknown by no sick calls for care being allowed. The poorly timed tests tests became the evidence Warden Bowers and AW Kelly cited in prejudice and decided to not let me see Dr Johnson who ordered the urgent tests. A vicious cycle of cruel and unusual punishment.

26

4



**FEDERAL CORRECTIONAL INSTITUTION**
**MORGANTOWN, WEST VIRGINIA**
**REQUEST FOR ADMINISTRATIVE REMEDY**
**INFORMAL RESOLUTION FORM**

Bureau of Prisons Program Statement 1330.18, Administrative Remedy Program, states that before an inmate seeks formal review of a complaint, he must try to resolve the complaint informally before he will be given an Administrative Remedy form. The informal resolution process should be completed in a timely manner.

INMATE'S NAME: _Paul Hoover_ REG. NO. _250 30 111_ UNIT: _Randolph_

1. Specific Complaint:

See attachment #1, page #4, item # A and B
To sum it up: Negligent delays in diagnostic testing and care of my severe acute 4 months duration abdominal illness

2. Relief Requested: with failure to be resolved by surgery

See attachment #2, page #4-5, item # E
To sum it up: Without delay get me a colonoscopy then immediately get me to Dr Johnsons office for his

3. Date of Incident: _April 2020 to present_ assessment. Make the Dr Johnson

4. Date/Time Complaint Received From Inmate: _7-27-2020    14:10_ appointment now as would anyone with

5. Date/Time Informally Discussed With Inmate: _____ common sense would do.
These delays are gross

6. Staff Response: medical negligence

7. Date Administrative Remedy Provided: _____

8. Informal Resolution was/was not accomplished.

_[signature]_          _250 30 111_                    _7/26/20_
Inmate's Signature/Register Number                    Date

_[signature]_                     _CCC_                _7-27-2020_
Staff Member's Name and Title                         Date

_____                      _____
Unit Manager's Signature                              Date

DISTRIBUTION: If complaint is informally resolved before being receipted, Correctional Counselors shall maintain informal resolution form for future reference. If complaint cannot be informally resolved (including by Unit Manager), forward original resolution form, attached to Administrative Remedy form, to the Administrative Remedy Coordinator/Clerk.

Attachment A

MRG 1330.18A                                          10/04/2018

W    *given to me by MR Edwards 8/12/20 4 pm*

## RESPONSE TO INMATE REQUEST FOR ADMINISTRATIVE REMEDY

### HOOVER, PAUL MICHAEL

#### 25030-111

This is response to your inmate request for administrative remedy dated July 27, 2020. Your request to be referred to direct home confinement under the CARES Act, has been denied and you would like your medical record to be updated to reflect multiple risk factors that are considered by the CDC. You also make multiple allegations of neglect toward the Health Services Department.

You have multiple records that you feel contribute evidence to what you feel is your incomplete medical record. On your next movement day Please provide a copy of the records to the Health Services Administrator along with list of the specialists that performed the consult and made the diagnosis that you claim are missing from your record.

The Health Services Administrator will ensure that releases of information are complete to obtain certified copies of the records for addition to your electronic record.

The noted allegations made towards the Health Services Department and providers has been received and so noted.

*Ellen Hoffman, HSA*

E. Hoffman, Health Services Administrator

08/07/2020
Date

*During my meeting with HSA Hoffman, she offerred me no "Releases of information" forms, for me to sign, to obtain certified copies,*

*Note, after my meeting with HSA Hoffman, she offerred me no "Releases of information" forms, for me to sign, to obtain certified copie*

*HSA Hoffman, told me she would not place the document in which I listed the 22 critical medical Records sources to substantiate my claims to active and preexisting medical conditions.*

*My health care file, will substantiate this information, as it has No "Releases of information" forms signed by me, to obtain certified copies, completed after July 2020.*

F F



## FEDERAL CORRECTIONAL INSTITUTION
## MORGANTOWN, WEST VIRGINIA
## REQUEST FOR ADMINISTRATIVE REMEDY
## INFORMAL RESOLUTION FORM

Bureau of Prisons Program Statement 1330.18, Administrative Remedy Program, states that before an inmate seeks formal review of a complaint, he must try to resolve the complaint informally before he will be given an Administrative Remedy form. The informal resolution process should be completed in a timely manner.

INMATE'S NAME: Paul Hoover    REG. NO. 25030 111    UNIT: Randolph

1. Specific Complaint: See attachment #1, page #1 and page #2, item #1. To sum it up: Failure to place my documentations into my medical file

2. Relief Requested: See attachment #2, page #1, item #A. To sum it up: put the documents into my medical files.

3. Date of Incident: about 7/17/20

4. Date/Time Complaint Received From Inmate: 7-27-2020    1410

5. Date/Time Informally Discussed With Inmate: _____

6. Staff Response: _____

7. Date Administrative Remedy Provided: _____

8. Informal Resolution was/was not accomplished.

_____ 25030 111          7/26/20
Inmate's Signature/Register Number          Date
_____ Counselor          7-28-2020
Staff Member's Name and Title          Date
_____          8/12/2020
Unit Manager's Signature          Date

DISTRIBUTION: If complaint is informally resolved before being receipted, Correctional Counselors shall maintain informal resolution form for future reference. If complaint cannot be informally resolved (including by Unit Manager), forward original resolution form, attached to Administrative Remedy form, to the Administrative Remedy Coordinator/Clerk.

Attachment A

MRG 1330.18A

10/04/2018

*evidence page 18 of 67*

4

66

②

# FEDERAL CORRECTIONAL INSTITUTION
## MORGANTOWN, WEST VIRGINIA
### REQUEST FOR ADMINISTRATIVE REMEDY
### INFORMAL RESOLUTION FORM

Bureau of Prisons Program Statement 1330.18, Administrative Remedy Program, states that before an inmate seeks formal review of a complaint, he must try to resolve the complaint informally before he will be given an Administrative Remedy form.  The informal resolution process should be completed in a timely manner.

INMATE'S NAME: Paul Hoover    REG. NO. 25030111 UNIT: Randolph

1. Specific Complaint:

See attachment #1, page 2, item #2
To sum it up: Staff Refusal to even seek pertinent medical Records as to my covid 19 Risk factors

2. Relief Requested:

See attachment #2, page #1, Item #B
To sum it up: Do what it takes to do your job accurately to assess my covid 19 Risk factors. Do so without complaints or excuses to not do your job. Negligence of accurate covid 19 Risk factors assessments puts me at Risk of loss of my health or life.

3. Date of Incident: about. 7/17/20

4. Date/Time Complaint Received From Inmate: 7-27-20 /410

5. Date/Time Informally Discussed With Inmate: _____

6. Staff Response: _____

7. Date Administrative Remedy Provided: _____

8. Informal Resolution was/was not accomplished.

_____ 25030111
Inmate's Signature/Register Number

_____ Counselor
Staff Member's Name and Title

_____
Unit Manager's Signature

7/26/20
Date

7-27-2021
Date

_____
Date

DISTRIBUTION:  If complaint is informally resolved before being receipted, Correctional Counselors shall maintain informal resolution form for future reference.  If complaint cannot be informally resolved (including by Unit Manager), forward original resolution form, attached to Administrative Remedy form, to the Administrative Remedy Coordinator/Clerk.

Attachment A

MRG 1330.18A                                    10/04/2018

4

FEDERAL CORRECTIONAL INSTITUTION
MORGANTOWN, WEST VIRGINIA
REQUEST FOR ADMINISTRATIVE REMEDY
INFORMAL RESOLUTION FORM

H H


Bureau of Prisons Program Statement 1330.18, Administrative Remedy Program, states that before an inmate seeks formal review of a complaint, he must try to resolve the complaint informally before he will be given an Administrative Remedy form.  The informal resolution process should be completed in a timely manner.

INMATE'S NAME: _Paul Hoover_    REG. NO. _25030 111_ UNIT: _Randolph_

1. Specific Complaint:

See attachment #1, page #2, item #3
See attachment #2, page # 1-3, item #C
To sum it up: Refusal by staff to even consider the paramount covid
2. Relief Requested: Risk Factor of blood clots (my DVT/PE and chronic
See attachment #2, page #1-2, 1 2 3, item # DVT)
Remedy on page 3 of attachment #2 item # C
To sum it up : Immediately Represent my covid 19 Risk Factors of Blood
3. Date of Incident: _about 7/17/20_                        clot disorder (DVT) and
                                                       convey it to the warden

4. Date/Time Complaint Received From Inmate: _7-27-2020   14:10_

5. Date/Time Informally Discussed With Inmate: _____

6. Staff Response: _____

7. Date Administrative Remedy Provided: _____

8. Informal Resolution was/was not accomplished.

_____  _2 50 30 111_         _7/26/20_
Inmate's Signature/Register Number          Date
_____  C.C.C                  _7-27-2020_
Staff Member's Name and Title               Date

_____
Unit Manager's Signature                    _____
                                            Date

DISTRIBUTION: If complaint is informally resolved before being receipted, Correctional Counselors shall maintain informal resolution form for future reference.  If complaint cannot be informally resolved (including by Unit Manager), forward original resolution form, attached to Administrative Remedy form, to the Administrative Remedy Coordinator/Clerk.

Attachment A

MRG 1330.18A

10/04/2018

4

# FEDERAL CORRECTIONAL INSTITUTION
## MORGANTOWN, WEST VIRGINIA
### REQUEST FOR ADMINISTRATIVE REMEDY
### INFORMAL RESOLUTION FORM



II

Bureau of Prisons Program Statement 1330.18, <u>Administrative Remedy Program</u>, states that before an inmate seeks formal review of a complaint, he must try to resolve the complaint informally before he will be given an Administrative Remedy form. The informal resolution process should be completed in a timely manner.

INMATE'S NAME: _Paul Hoover_  REG. NO._25030 111_ UNIT: _Randolph_

1. Specific Complaint:
See attachment #1, page #3, item #4
To sum it up: Staff was verbally dismissive of using risk factors I happen to possess

2. Relief Requested:
see attachment #2, page #3 + 4, item # D
To sum it up: Immediately apply the many risk factors I happen to possess (such as DVT blood clots, hypertension and immune system impairment by Crohn's disease, and others also present as I have documented). Then convey these risk factors of Covid 19 immediately to the warden.

3. Date of Incident: _about 7/17/20_

4. Date/Time Complaint Received From Inmate: _7-27-2020 1410 by CRHW's_

5. Date/Time Informally Discussed With Inmate: _____

6. Staff Response: _____

7. Date Administrative Remedy Provided: _____

8. Informal Resolution was/was not accomplished.

_____  _250 30 111_
Inmate's Signature/Register Number

_____ CCC
Staff Member's Name and Title

_7/26/20_
Date

_7/27/2021_
Date

_____
Unit Manager's Signature

_____
Date

DISTRIBUTION: If complaint is informally resolved before being receipted, Correctional Counselors shall maintain informal resolution form for future reference. If complaint cannot be informally resolved (including by Unit Manager), forward original resolution form, attached to Administrative Remedy form, to the Administrative Remedy Coordinator/Clerk.

Attachment A

MRG 1330.18A

10/04/2018

V V V

4

FEDERAL CORRECTIONAL INSTITUTION
MORGANTOWN, WEST VIRGINIA
REQUEST FOR ADMINISTRATIVE REMEDY
INFORMAL RESOLUTION FORM

Bureau of Prisons Program Statement 1330.18, Administrative Remedy Program, states that before an inmate seeks formal review of a complaint, he must try to resolve the complaint informally before he will be given an Administrative Remedy form. The informal resolution process should be completed in a timely manner.

INMATE'S NAME: _Paul Hoover_ REG. NO. _25030 111_ UNIT: _Carlson_

1. Specific Complaint: _I have sought care, several times, for injury of my Left upper arm, Left shoulder and neck. Overtime, I have lost my biceps reflex and biceps muscle + contraction ability. Severe pain and nearly total disability has ensued. The Neurologic exam and inspection of the deformity of my upper arm has not been done though I sought such. Another inmate had their injury of similar nature_

2. Relief Requested: _Addressed rapidly. This is prejudicial treatment. The Orthopedic surgical evaluation and Left shoulder MRI Mr. Corbin sought. A Neurologic referral (Dr. Ward saw me before) and Left arm EMG/NCV_

3. Date of Incident: _12/31/20 and 5 weeks thereafter, both severe falls due to floor damage at Carlson and ducks running on pathway to from office_

4. Date/Time Complaint Received From Inmate: _3-31-21_

5. Date/Time Informally Discussed With Inmate: _4-14-21_ _1233pm_

6. Staff Response: A review of the matter revealed that you are scheduled for physical therapy and pain management. A regional review of a request for an orthopedic consult resulted in disapproval as physical therapy has been approved and scheduled. An MRI request was also reviewed by the region and deferred at this time due to physical therapy and pain management being conducted.

7. Date Administrative Remedy Provided: _4-14-21_

8. Informal Resolution ~~was~~ ~~was not~~ accomplished.

_[signature]_ 25030 111                                    _3/31/21_
Inmate's Signature/Register Number                          Date

_[signature]_ Counselor                                     _4-14-21_
Staff Member's Name and Title                               Date

_____                               _____
Unit Manager's Signature                                    Date

DISTRIBUTION: If complaint is informally resolved before being receipted, Correctional Counselors shall maintain informal resolution form for future reference. If complaint cannot be informally resolved (including by Unit Manager), forward original resolution form, attached to Administrative Remedy form, to the Administrative Remedy Coordinator/Clerk.

Attachment A

MRG 1330.18B                                            10/28/2019

OO OOO

**FEDERAL CORRECTIONAL INSTITUTION
MORGANTOWN, WEST VIRGINIA
REQUEST FOR ADMINISTRATIVE REMEDY
INFORMAL RESOLUTION FORM**

Bureau of Prisons Program Statement 1330.18, Administrative Remedy Program, states that before an inmate seeks formal review of a complaint, he must try to resolve the complaint informally before he will be given an Administrative Remedy form. The informal resolution process should be completed in a timely manner.

INMATE'S NAME: Paul Hoover      REG. NO. 25030111   UNIT: Carlson

1. Specific Complaint:
Facts exist to start anti-TNF therapy for my Crohns disease, I am experiencing great harms in delaying this care. GI consultation is limited because Dr Johnson, my surgeon, made the definitive diagnosis at

2. Relief Requested: Surgery in March 2020 and that diagnosis has been corroborated.
Start anti-TNF therapy, without further delays, and if needed have health services at some Regional level do a medical physician review to certify starting this medication

3. Date of Incident: 11/18/20

4. Date/Time Complaint Received From Inmate: 11-22-20    9.25 AM

5. Date/Time Informally Discussed With Inmate: 1-13-21

6. Staff Response:
Dr. O'Keefe is not yet convinced of Crohns. She has requested consultation with Dr. Johnson. Consultation requests have been submitted and are pending to be scheduled.

7. Date Administrative Remedy Provided:

8. Informal Resolution was/was not accomplished.

Inmate's Signature/Register Number          Date  1/13/21

Staff Member's Name and Title              Date  1-13-21

Unit Manager's Signature                   Date

DISTRIBUTION: If complaint is informally resolved before being receipted, Correctional Counselors shall maintain informal resolution form for future reference. If complaint cannot be informally resolved (including by Unit Manager), forward original resolution form, attached to Administrative Remedy form, to the Administrative Remedy Coordinator/Clerk.

Attachment A
MRG 1330.18

12/03/2015

Attachment in support of the 808.5 relief I have Requested Filed on 10/22/20 to Health Services

The conventional route to diagnose Crohn's disease is by a GI doctor using elective colonoscopy, imaging studies and blood tests. These tests have many limitations, particularly centered around the fact, they do NOT provide direct visualization of the entire terminal ileum. No pathognomonic tests exist to diagnose Crohn's disease. Some other limitation, listed per test are:

1) Colonoscopy - difficulties intubating the small bowel as occurred in my case

2) biopsy - various results can occur, even normal findings as disease activity varies by rising in one area and declining in other areas. Crohn's can occur anywhere between the mouth and the anus.

3) Imaging studies - arguments according to variable disease activity and disease variable location exist as stated under #2. Additionally, the capacity to see intestinal wall abnormalities can be clouded, as occurred in my case, by severe constipation causing intestinal wall changes brought about by severe distention initiating pathologic intestinal wall processes.

4) Lab work can oftentimes be normal with or without disease activity being present

In my case, I experienced an usual very severe disease symptom onset which looked clinically similar to acute appendicitis. This led to an unconventional route to diagnose my Crohn's disease. During emergent abdominal surgery, Dr Johnson, observed inflammation appearance in my terminal ileum (inflammatory terminal ileitis) along with dense abdominal adhesions nearby. These adhesions, in light of me having no prior abdominal surgery, clearly evidences inflammation beyond the confines of the intestines thereby leading to the appropriate designation of my Crohn's disease as severe. In the ER, on 10/16/20, Dr Johnson again told me his findings were clear and he saw no need to perform an added abdominal surgery for a biopsy. Corroboration of Dr. Johnson diagnosis includes a preop CT showing wall abnormalities consistent with terminal ileitis, a postop CT showing colitis and an abnormal high ANCA. Delayed timing of these tests, as well as colonoscopy, certainly effected magnitude of the abnormalities noted. Surgical visualization, as in my case, is superior, with far less limitations to make the diag.

Now, as to treatment, there existed a single class of drugs which, as represented in medical textbooks, are the medical standard of care for my disease. I quote page 656 of the 2017 edition of Current Medical Diagnostics and Treatment:

"anti-TNF biologic therapies are recommended as the preferred first-line agents to induce remission in patients with moderate to severe Crohn's disease". Also to quote "step up therapy is obsolete"

Lacking treatment, for the past 8 months, has caused me a myriad of harms and disease complications as well as continued severe symptoms. To ameliorate the symptoms of this Crohn's disease, it's harms and complications, I have required multiple ER visits and a recent prolonged hospitalization. Some of these harms and complications include:

1) The dense abdominal adhesions have led to severe constipation. The substantial straining, over many days, to resolve this constipation has caused:
   a) Upper Lumbar spinal disc herniation with a dense sustained Neurologic deficit from Radiculopathy.
   b) Right inguinal and Right femoral hernias with a painful fluid mass upon my Right testicular nerve.

2) Inactivity from severe pain has worsened my Left calf DVT blood clot and my EVALI related pulmonary fibrosis as noted, in the hospital, by many low pO2 saturations.

3) Aggravation of my hypertension which seemed to produce the 2 stroke events recorded during my hospital stay by 2 different nurses on 2 different days (10/17/20 and 10/21/20)

4) Aggravation of my seizures.

5) Substantial Medical error. I returned from the hospital on 10/25/20 and was quarantined in the SHU. NONE of my critical and usual medications, in fact NO medications, were provided to me until late on 10/27/20. I, as often as I could, sought my medications as I became sicker. To get my medications. I had to repeatedly yell "I need to see a doctor or the shift commander". Hours later, when I finally was able to see Miss Coffin, my blood pressure was 161/106 and my severe headaches indicated hypertensive crisis.

Please start anti-TNF therapy to allow me to avoid further harms to my health!

*Randolph*
*ZZ ZZ Z*

## INMATE REQUEST TO STAFF MEMBER RESPONSE

**NAME:**    HOOVER, PAUL MICHAEL
**REG. NO.:** 25030-111

This is in response to a request, received on <u>July 8, 2020</u> for a referral to direct home confinement by way of the CARES Act.

On May 8, 2020, specifically, the eligibility criteria was updated to include no current offense history of violence and the requirement that you must have a risk factor in accordance with the CDC guidelines. A review of this matter reveals you were reviewed for direct home confinement. You currently have a risk or recidivism of Minimum, you have served 20.5% of your statutory time, and have a release date of March 20, 2028, and there are no identified risk factors listed per the CDC guidelines. You have not served 50% of your statutory time, nor have your served 25% with less than 18 months until your release. Therefore ineligible for direct home confinement by way of the CARES Act.

*Before To medical to update Risk Factor and before colonoscopy and surgers eval. plan concluded*

The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates. We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus. However, your concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence. Accordingly, your RIS request is denied at this time.

If you are not satisfied with this response to your request, you may commence an appeal of this decision via the administrative remedy process by submitting your concerns on the appropriate form (BP-9) within 20 days of the receipt of this response.

_____    Date: _7·21·20_
F.J. Bowers, Warden

cc:  Medical Records
     Unit Team

**REQUEST FOR ADMINISTRATIVE REMEDY**
**ADMINISTRATIVE REMEDY #1048555-F1**

BBBBBB

This is in response to your Request for Administrative Remedy, received on September 23, 2020, wherein you request reconsideration for your Reduction in Sentence (RIS)/Compassionate Release.

Title 18 of the United States Code, section 3582(c)(1)(A), allows a sentencing court, on motion of the Director of the BOP, to reduce a term of imprisonment for extraordinary or compelling reasons. BOP Program Statement No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), provides guidance on the types of circumstances that present extraordinary or compelling reasons, such as the inmate's terminal medical condition; debilitated medical condition; status as a "new law" elderly inmate, an elderly inmate with medical conditions, or an "other elderly inmate"; the death or incapacitation of the family member caregiver of the inmate's child; or the incapacitation of the inmate's spouse or registered partner. A review of your initial RIS/Compassionate Release request as well as information in your Administrative Remedy revealed that your request has been evaluated consistent with this general guidance.

Your concerns about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence. Accordingly, your request for Administrative Remedy is denied at this time.

If dissatisfied with this response, you may appeal to the Mid-Atlantic Regional Director, Federal Bureau of Prisons, 302 Sentinel Drive, Suite 200, Annapolis Junction, Maryland 20701. Your appeal must be received in the Regional Office within 20 days of the date of this response.

F. J. Bowers, Warden                    10/01/2020
                                        Date

UNICOR FEDERAL PRISON INDUSTRIES, INC.
LEAVENWORTH, KANSAS

CCCCCC

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Hoover, Paul M.    25030111    Carlson    Morgantown FCI
LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.    UNIT    INSTITUTION

**Part A– INMATE REQUEST**

On 11/22/20 at 9²⁵ am I filed an informal Resolution form regarding the excessive delay in starting the one clear treatment choice for my severe Crohn's disease (see attached form and it's one page attachment). The administrative Remedy I seek is immediate commencement of an anti-TNF biologic agent, such as adalimumab.
My evidence #1 is a 9 page document which I generated based upon extensive current medical evidence concerning the needed treatment of my severe Crohn's disease. It also presents the many harms (continued on attached sheet)

1/10/21
DATE                    SIGNATURE OF REQUESTER

**Part B– RESPONSE**

_____          _____
DATE                                     WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE          CASE NUMBER: _____

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

Attachment to BP 9 dated 1/10/21
Paul M Hoover          Z 5030111
                              DDDDDD

I have experienced by receiving no treatment for nearly 10 months. That document (evidence #1) states clearly the basis of the diagnosis, but, let me reiterate:

1) Operative findings, by Dr Mark Johnson on 3/30/20, of "There was an abundance of adhesions the right lower quadrant around the cecum, particularly laterally. Since the patient has never undergone surgical intervention before, I was concerned about acute inflammation in this location". (evidence #2, page 2). To further characterize the findings "Laparoscopic appendectomy showed right lower quadrant inflammatory changes with dense adhesions between the lateral wall of the cecum and the pelvic sidewall March 2020 (evidence #3 and #4). Dr Mark Johnson, in the ER, at Mon General Hospital, on 10/16/20 stressed to me he saw "transmural terminal ileitis aka Crohn's disease". If you have other questions, please call Dr. Mark Johnson.

2) On 3/30/20 preoperative CT scan with IV contrast there was "fecalization of the distal ileum" and this finding was made on 4/16/20 by Dr Mark Johnson and his consulting Radiologist. Dr Johnson told me the initial reading on 3/30/20 was in error and what is truly present is "fecalization of the distal ileum" (evidence #5, page 1)

3) Abnormal elevated AMCA lab value that was drawn on 8/24/20 with results comments stating "Suggestive of Crohn's disease" (evidence #6)   Further Note: Diagnosis of Crohn disease is a Hospital discharge diagnosis (evidence #7)

There is a single clear choice of treatment for my Crohn's disease (see evidence #1, page 5 and page 6) and this is substantiated by extensive high quality medical references (evidence #1, page 8 and 9). This treatment choice is an anti-TNF biologic agent, such as adalimumab. Please start this medication without further delay, so my severe abdominal symptoms can lessen.

*evidence page 53 of 67*

*EEEEEE*

## REQUEST FOR ADMINISTRATIVE REMEDY
## ADMINISTRATIVE REMEDY #1065643-F1

This is in response to your Request for Administrative Remedy received on January 21, 2021, in which you request immediate commencement of anti-INF biologic agent such as adalimumab

Our review indicates that since your arrival to the Bureau of Prisons, you have no confirmed condition that would require a prescription of such medication.

Consultation from Dr. Johnson on March 30, 2020, resulted in a laparoscopic appendectomy. The surgical intervention had revealed an abundance of adhesions in the right lower quadrant around the cecum, particularly laterally. No diagnosis or mention of Severe Crohns disease.

Computed tomography of the abdomen and pelvis performed on May 19, 2020, resulted an impression of no acute process with the abdomen or pelvis. Large amounts of stool in the right colon and transverse colon. Colonoscopy on July 29, 2020, yielded "Diverticula few hemorrhoids otherwise negative." Follow up with Dr. Okeefe on December 28, 2020, she explained to you the reluctance to prescribe meds like Humira without more evidence of disease.

On January 27, 2020, a progress note was received from Dr. Okeefe stating that she consulted with Dr. Johnson who stated "I never told the patient he had Crohn's disease."

A consultation request has been submitted and approved for Dr. Johnson to evaluate. A request for scheduling is pending action with Seven Corners.

Based on the information presented, your request for relief is denied. If you are dissatisfied with this response, you may submit an appeal to the Regional Director, Mid-Atlantic Regional Office, 302 Sentinel Drive, Suite 200, Annapolis Junction, Maryland 20701.  Your appeal must be received in that office within 20 calendar days from the date of this response.

F. J. Bowers , Warden

2/9/21
Date

4

*evidence # 3*

NNNNNN

## FEDERAL CORRECTIONAL INSTITUTION.
## MORGANTOWN, WEST VIRGINIA
## REQUEST FOR ADMINISTRATIVE REMEDY
## INFORMAL RESOLUTION FORM

Bureau of Prisons Program Statement 1330.18, Administrative Remedy Program, states that before an inmate seeks formal review of a complaint, he must try to resolve the complaint informally before he will be given an Administrative Remedy form. The informal resolution process should be completed in a timely manner.

INMATE'S NAME: _Paul Hoover_   REG. NO. _25030111_ UNIT: _Carlson_

1. Specific Complaint: *In Reply to an BP 8,5 on 1/13/21 and a BP 9 on 2/9/21 I was to specifically see Dr Johnson, my operating surgeon, who saw my pathology, to make diagnosis and treatment. On 3/30/21, I was sent to his office to see a Dr Popkin (or some name like that) who was not present at my surgery and thereby could not contribute so he refered me to see Dr Johnson. In the USA Today on 3/16/21, Dr Pugliese, on page 2D, stated vaccination may flare up an autoimmune disease.*

2. Relief Requested: *Please send me for evaluation with Dr Johnson as soon as able. My condition is in severe flare up and I have had to defer on vaccination due to the data in the USA Today referenced above.*

3. Date of Incident: _3/30/21_

4. Date/Time Complaint Received From Inmate: _4-12-21_   _1500_

5. Date/Time Informally Discussed With Inmate: _4-14-21_   _1234_

6. Staff Response: Based on the BP-9 response and a review of your medical records indicate you do not have a diagnosis of Crohn's disease. You have been scheduled for a general surgery consult and have been seen. You have already submitted an informal resolution and a BP-9 for this same issue.

7. Date Administrative Remedy Provided: _____

8. Informal Resolution was/(was not) accomplished.

Inmate's Signature/Register Number

_____   Date

Staff Member's Name and Title   _4-14-21_   Date

Unit Manager's Signature   _____   Date

DISTRIBUTION: If complaint is informally resolved before being receipted, Correctional Counselors shall maintain informal resolution form for future reference. If complaint cannot be informally resolved (including by Unit Manager), forward original resolution form, attached to Administrative Remedy form, to the Administrative Remedy Coordinator/Clerk.

Attachment A

MRG 1330.18A                                      10/04/2018

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

QQQQQQ

evidence #1

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: Hoover, Paul M        2503011        Carlson        Morgantown
LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

**Part A—REASON FOR APPEAL**

I received a BP 9 reply on 2/9/21 which stated a commitment, by our Warden, to try to resolve my complaints by specifically being seen in consultation by Dr Johnson, my operating surgeon. Thereafter, this commitment, to have me seen by Dr Johnson, was and continues to be officially denied to me. This new policy of our Warden prejudically and irrationally road-blocking my medical care is evidenced in the attached letter with its 10 pages of evidence. I look forward to your 4/22/21 replies to ameliorate the injustices perpetrated upon me.

DATE                                        SIGNATURE OF REQUESTER

**Part B—RESPONSE**

DATE

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

REGIONAL DIRECTOR

ORIGINAL: RETURN TO INMATE

**Part C—RECEIPT**

CASE NUMBER: _____

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

BP-230(13)

TRULINCS 25030111 - HOOVER, PAUL MICHAEL - Unit: MRG-A-A

--------------------------------------------------------------------------------

FROM: 25030111
TO: Gormon, Wes
SUBJECT: Letter to BOP regional
DATE: 04/20/2021 10:16:11 AM

Dear Sirs,

This letter accompanies a 4/22/21 BP 10 form for administrative remedy (evidence #1). By my collective reading of official documents, presented to me at MRG FCI, under the auspice of our Warden, on 2/9/21(evidence page 53 of 67) and 4/14/21 (evidence #3), it is apparent the care of my severe abdominal condition has moved from ludicrously delayed to suspended. Therefore, by this document, I am, for the umpteenth time, filing to receive care of my severe abdominal condition with signs and symptoms of daily and nightly right lower quadrant pain and tenderness of the abdomen thereby causing very poor sleep, frequent bowel movements with large clumps of pus like material that is often blood tinged, prolonged cold sweats with lassitude causing several falls and their concomitant injuries, severe perianal problems, sacroiliac problems as evidenced by physical therapy, eye abnormalities and many food intolerances. I place this appeal as the actions of MRG FCI and it's Warden are proliferating my suffering and harms from this prolonged health crisis. Based upon my medical condition and the accrued medical evidence, I ask for referral to the GI clinic at the main campus of UPMC (University of Pittsburgh Medical Center) so as to acquire diagnostic specimens, such as biopsies, of the surgical pathology, seen during my abdominal surgery on 3/30/20. A clinic, such as that, would replace the inept care I have received from Dr Johnson and Dr O'Keefe. A medical center, like UPMC, would be capable of a repeat abdominal surgery to obtain the specimens which Dr Johnson failed to collect on 3/30/20. Specimens including, but, not limited to, tissue biopsies, swabbing for infectious cultures and ascitic fluid for SAAG scoring. Such a medical center would also be well versed in the examination of my condition as a potential autoimmune variety of post covid-19 infection syndrome (aka "long hauler" illness) by their focus of staying current with all emerging medical evidence, about covid-19, which is gaining the moniker of "the autoimmune virus".

I need such post covid-19 infection syndrome testing, because, my condition resembles it and I had an episode of a likely covid-19 infection in mid-March 2020 which then dove-tailed into this abdominal condition requiring emergency abdominal surgery on 3/30/20. One inmate, a good friend, may well have been a spreader, because, he had a usual contact visit with his sister in late February 2020. In early March, he informed me, she had died of covid-19. Another inmate, I was daily in pill line with, had strange serious symptoms which later were known to be classic covid-19 infection symptoms. After these contacts, on about 3/13/20, I developed what I thought to be the flu and I treated it symptomatically with commissary Tylenol. I was prostrate for 7 to 10 days with this illness of headache, fever, pleuritic chest pain, trouble breathing and loss of taste and smell.

In this document, as in others, I provide opinions, of my medical needs, based upon the high quality of the medical education, training and experience afforded to me over several decades. I received my B.S. degree, magna cum laude, in Zoology at California State Polytechnic University in Pomona, CA, followed by my M.D. from Loyola University Stritch School of Medicine in Chicago, IL. I then completed an internship in Internal Medicine at the prestigious University of Pittsburgh, Presbyterian University Hospital in Pittsburgh, PA, followed by a residency in Physiatry, serving as Chief Resident in my fourth and final year. To be clear, the bad choices which made me guilty of crimes, crimes I whole-heartedly detest and cause me shame, however, these crimes did not make me stupid to medical facts.

Based upon my education, training and experience the key approach for excellent medical care is to pursue the pathology. This is common sense. Colonoscopy, CT and MRI scans may all supplement some information, however, they do not, in part or in total, represent adequate medical assessment of my abdominal condition as they do not address the observed abdominal pathology, to date not fully explained, being documented in the operative note as "right lower quadrant inflammatory changes with dense adhesions between the lateral wall of the cecum and the pelvic sidewall" (evidence #4 page 1). The serious medical error practiced by Dr Johnson was to, during that 3/30/20 emergency abdominal surgery, remove normal tissues, namely, my appendix, while not undertaking specimen acquisition to seek to explain these frankly abnormal tissues in the area of my symptoms. The highly regarded "Mayo Clinic approach" is, in a nutshell, to "always biopsy an abnormality". He should have collected specimens, such as biopsies, swabbing and ascitic fluid, to run tests upon, develop cultures from and to slice and stain for microscopic analysis. The visualized operative findings of peritoneal lining inflammation, at the very least, should have been addressed in a differential diagnostic fashion by examining for SAAG (serum-ascitic albumin gradient) scoring, infectious causes (notably bacterial, tuberculosis, HIV and fungal and during this pandemic, of course, covid-19 antigens and antibodies), cancerous causes (notably pseudomyxoma peritonei, primary mesothelioma and peritoneal carcinomatosis), vasculitic causes (notably autoimmune diseases like extra luminal Crohn's disease and the now discovered long hauler illness following some covid-19 infections) as well as eosinophilic peritonitis. On 3/30/21, when I was denied a visit for consultation with Dr Johnson, and was instead sent by MRG FCI to a different doctor in his office, I asked his associate why such evaluations were not conducted in my case? He provided no answer whatsoever and stated "He doesn't need to be threatened by me". There was no threat in my honest inquiry and it is reasonable for a patient to inquire as to the quality of his care.

When I awoke from anesthesia, postoperatively, on 3/30/20, situations became somewhat surreal as Dr Johnson had only one question, for me, to help explain my substantial surgical abnormalities discovered in my abdomen. He asked me "did you recently ingest a large and sharp piece of a SHELL"? Such an object, he stated, could slice through my intestinal wall from the

TRULINCS 25030111 - HOOVER, PAUL MICHAEL - Unit: MRG-A-A
--------------------------------------------------------------------------------------------------------

inside out. Such an occurrence would certainly not be a mild incidental discovery.

Dr Johnson's medical errors have cost me over a year of suffering and many severe complications which are in evidence in my medical records. Furthermore, he has also exposed me to the risks associated with a second abdominal surgery to pick up where he failed to go. At the 4/16/20 postoperative office visit, by Dr Johnson, arranged based upon my urgent medical needs, he initiated an URGENT (evidence page 21 of 67) hunt for the intestinal luminal causes, such as Crohn's disease, based upon his personal reading of the 3/30/20 CT scan of abdomen & pelvis revealing "fecalization of the distal ileum" (evidence page 20 of 67). Immediately after these clear instructions by Dr Johnson, MRG FCI for some reason, not founded upon any examination of me, choose to severely neglect and countermand Dr Johnson's orders and turned "URGENT" to egregious delays of testing and care as the records clearly reflect. Then, on 8/24/20, Crohn's disease became the operant diagnosis based upon an abnormally elevated AMCA level, on an inflammatory bowel disease panel, with that abnormal result being stated as "suggestive of Crohn's disease" (evidence #6).

Dr O'Keefe, the GI specialist, MRG FCI sent me to, possessed a professional duty, to me, to make a diagnosis and if she was uncertain, then to provide me with reasonable diagnostic recommendations. She failed me in this duty by not making any salient recommendations.

Now I will address the 2/9/21 letter from the Warden (evidence page 53 of 67). This letter, when viewed side by side with the actual medical facts, established in my case, reflects more an adversarial debate of dishonesty than a fair adjudication of the request, I filed, for administrative remedy to obtain treatment, of my sufferings, with the preferred first-line therapy, namely, Humira, for the disease, namely, Crohn's, which all the evidence has pointed to (evidence page 51 and 52 of 67). The dishonesty of the Warden's position, or shall we say argument, exists in the distortions of, and disregard for, several pertinent medical facts. Crohn's disease is an autoimmune INFLAMMATORY disease. I will now display the evidence showing, by the Warden's argument, contained in the 2/9/21 letter, all evidence of an inflammatory disease was removed and all tests showing intestinal pathology or suggestive of Crohn's disease were disregarded.

1. The Warden violated the actual 3/30/20 abdominal surgery operative findings of "right lower quadrant INFLAMMATORY CHANGES with dense adhesions between the lateral wall of the cecum and the pelvic sidewall" (evidence #4 page 1) and falsified them, by deleting all mention of inflammatory changes, to be "The surgical intervention had revealed an abundance of adhesions in the right lower quadrant around the cecum particularly laterally" (evidence page 53 of 67).

2. Next, the Warden deleted, by his disregard, the notes of Dr Johnson, on 4/16/20, when Dr Johnson found the CT scan of the abdomen & pelvis, done on 3/30/20, to reveal "fecalization of the distal ileum" (evidence page 20 of 67) which is an abnormal intestinal finding in the classic location which Crohn's disease is known to damage. Apparently, such an abnormal test result did not serve the purposes of the Warden's arguments.

3. Next, the Warden disregarded a blood test, collected on 8/24/20, which not only pointed to an inflammatory bowel disease, it pointed specifically towards Crohn's disease, namely, the elevated AMCA interpreted as "suggestive of Crohn's disease" (evidence #6). In the Warden's reply to my plea for health care, care by law he is bound to provide to me, revealed this deranged approach, of editing and deleting relevant medical data, and this conduct is simply a form of medical neglect, more serious as there is a stubborn pattern of this neglect.

Clearly, as the next actions of Warden reflects, he did not yet consider my medical care sufficiently disrupted. Recall, in #1 and #2 above, medical facts, within the findings of Dr Johnson, were edited and disregarded by the Warden so as to advance his irrational arguments. Now, please refer to the Warden's 2/9/21 letter, contained within it is a literal commitment to have me seen in consultation with specifically Dr Johnson (evidence page 53 of 67). This commitment, on his part, he choose to violate by, on 3/30/21, sending me to see an associate of Dr Johnson, a man not present at my surgery and ,therefore, completely lacking in first-hand experience in my case. This doctor stated to me I would need to see Dr Johnson to address the issues of my diagnosis and care. Immediately, after this injustice, I sought remedy and, on 4/14/21, I received answer to my filing. In it, I was not only denied a consult with Dr Johnson, it was proclaimed without further medical evidence, "you do not have a diagnosis of Crohn's disease", a statement seeming to "close" his intended prejudicial arguments (evidence #3). I must emphatically point out there exists no objective medical evidence which excludes the diagnosis of Crohn's disease and, furthermore, there is much objective medical evidence pointing toward Crohn's disease, so much so, my MRG FCI medical provider and the GI consultant, offered to treat me with mesalamine, a drug specifically used to treat Crohn's disease. I only refused that medication, because, I found a wealth, of best quality medical evidence, to reveal, many years ago, mesalamine was shown to have no efficacy in the current treatment of Crohn's disease (these references were contained in many filings I made to MRG FCI and I can provide upon request). The Warden clearly has taken a lot of actions to silence the input of Dr Johnson.     → (evidence page 54 of 67)

What I need is for the Warden to desist from "spinning the facts" and developing prejudicial roadblocks, to my care, and place the referral to the GI clinic at the main campus of UPMC so as to seek study of my pathology, including an analysis of an autoimmune variety of post covid-19 syndrome.

Another deleterious health effect is, by substantially disabling, by these roadblocks, my compassionate release motion. In Judge Hornak's ruling, he had keen interest in this abdominal condition and it's required care. The final negative health effect, I must mention, is that, without delineation and a care plan, for this severe active medical condition, I can make no adequate informed consent to receive vaccination. Thank you for your timely assistance for relief from these injustices.      → (evidence #69 p. 1 to 14)

Sincerely,

**REGIONAL ADMINISTRATIVE REMEDY APPEAL**
**PART B - Response**

**Date Filed: April 27, 2021          Remedy ID No.: 1065643-R1**

You appeal the Warden's response to your request for administrative remedy. You allege you are being denied medical treatment for Crohn's disease.

A review into this matter reveals you do not have a diagnosis of Crohn's disease. You were evaluated on March 30, 2021 by a gastroenterologist.  They discussed your case with the general surgeon who completed a procedure on you in 2020. The outcome of the conversation determined you were not diagnosed with Crohn's disease. You were noted to be clinically stable with no signs of acute illness. Following this appointment, you have not reported to sick call with any abdominal complaints. You are encouraged to communicate with your primary care provider team to address any additional medical concerns. There is nothing to indicate you have been denied medical treatment.

This response is for informational purposes. If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, DC 20534.  Your appeal must be received in the General Counsel's Office within 30 days from the date of this response.

**JUN 2 0 2021**
_____
Date

J. C. Petrucci
Regional Director
Mid-Atlantic Region

PPP PPP P
(P-7)

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF WEST VIRGINIA
### Wheeling

**PAUL MICHAEL HOOVER,**

       Petitioner,

    v.

                                      **Civil Action No. 5:21-cv-118**
                                        Judge Bailey

**F.J. BOWERS,**

       Respondent.

## MEMORANDUM OPINION AND ORDER

On July 19, 2021, the *pro se* petitioner, Paul Hoover, a federal inmate incarcerated at FCI Morgantown filed this habeas petition pursuant to 28 U.S.C. § 2241 together with the $5 filing fee. In support of his habeas petition, the petitioner raises one ground which the Court construes as an Eighth Amendment claim regarding deliberate indifference to issues related to symptoms which he maintains are consistent with Crohn's disease.

As a pro se litigant, the petitioner's pleadings are accorded liberal construction and held to "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even under this less stringent standard, the petition in this case is subject to summary dismissal. The requirements of liberal construction do not mean that the Court can ignore a clear failure to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Social Servs.*, 901 F.2d 387 (4th Cir. 1990). As discussed more fully below, the petitioner is not entitled to relief under 28 U.S.C. 2241, and this matter is due to be dismissed.

1

A section 2241 petition is used to attack the manner in which a sentence is executed. *See* 28 U.S.C. § 2241. In a 2241 petition, a prisoner may seek relief from his parole, computation of his sentence or disciplinary actions taken against him involving the loss of good conduct time. "[T]he Supreme Court [has] held that the writ of habeas corpus was the exclusive civil remedy for prisoners seeking release from custody." *Glaus v. Anderson,* 408 F.3d 382, 286 (7th Cir. 2005). Also, worth noting is that at the "heart of habeas corpus" petitions, the petitioner is challenging "the fact or duration of his physical confinement," or "seeking immediate release or speedier release from active confinement." *See Preiser v. Rodriguez,* 411 U.S. 475, 499-500 (1973). On the other hand, a *Bivens* action is used to hold federal officers "individually liable for constitutional violations." *Starr v. Baca,* 625 F.3d 1202 (9th Cir. 2011). Even more generally, a *Bivens* action allows individuals to sue a federal actor because he or she violated a right guaranteed by the Constitution or a federal law. *See Bivens,* 403 U.S. at 392-94. Furthermore, "[a]lthough 'more limited in some respects,' a *Bivens* action is a federal analog to an action against state or local officials under § 1983." Id. (quoting *Hartman v. Moore,* 547 U.S. 25, 254 n.2 (2006)). *See Preiser,* 411 U.S. at 499 ("a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not the fact or length of his custody.").

Here, the petitioner complains about his medical care and requests that this Court order FCI Morgantown to send him for testing and evaluation to address his medical condition. The petitioner's Eighth Amendment claims are not an attack on, nor are they related in any way to, the execution of his sentence. The petition does not contest the fact or duration of his confinement, and success on the merits would not result in immediate or speedier release from his actual confinement with the BOP.

2

*RRRRRRR* (R-7)

Thus, the petitioner's Eighth Amendment claims should have been raised pursuant to a

civil rights complaint. *Preiser* at 499-500 (a civil rights action is the proper remedy for a

prisoner challenging the conditions of his prison life). *See also* **Lee v. Winston**, 717

F.2d 888 (4th Cir. 1983).

In consideration of the foregoing, the petition is **DENIED and DISMISSED**

**WITHOUT PREJUDICE** and retired from the active docket of the Court. Said dismissal

does not bar the petitioner from filing a civil rights action pursuant to **Bivens.**

The Clerk of the Court is directed to mail a copy of this Memorandum Opinion

and Order, **together with a <u>Bivens</u> packet** to the petitioner by certified mail, return

receipt requested, to his last known address as reflected on the docket sheet.

**DATED**: July 20, 2021.

**JOHN PRESTON BAILEY**
**UNITED STATES DISTRICT JUDGE**

3